## JOHN TYSDAL v. S. E. BERGH.[1]

### May 2, 1919.

### No. 21,001.

**Vendor and purchaser — fraud — question for jury.**
    1. There was evidence of misrepresentation in a sale of land proper for submission to the jury.

**Same — exclusion of evidence error.**
    2. It was error to exclude evidence that, after discovery of the misrepresentation, plaintiff took a deed and gave defendant a large mortgage upon the property, without making any claim that he had an offset in damages for fraud.

Action in the district court for Norman county to recover $4,800 for fraudulent representations in the sale of certain land. The answer alleged that there were no representations in regard to the land except those made in the contract of sale and before the sale plaintiff personally inspected the land. The case was tried before Grindeland, J., and a jury which returned a verdict for $2,860.40. From an order denying his motion for a new trial, defendant appealed. Reversed and new trial granted.

*A. O. Ueland* and *F. H. Peterson,* for appellant.

*M. A. Brattland, Charles Loring* and *G. A. Youngquist,* for respondent.

HALLAM, J.

1. In September, 1914, defendant sold to plaintiff a quarter section of land in Norman county for $8,000. Plaintiff sued to recover damages for fraud inducing the sale, and demanded damages in the sum of $4,800. The jury gave a verdict for $2,860.40. Plaintiff appeals.

The fraud claimed is, that the defendant represented: First, that the land was free from foul seeds and that there was no danger from weeds, if the land was seasonably plowed; second, that the land was free from

[1]Reported in 172 N. W. 130.

stone bigger than a man's fist; and third, that it was properly drained and dry enough; that in fact the land was infested with kinghead, a black weed that chokes out the grain and is very hard to exterminate; that the soil contained many large stones not apparent on the surface, and that there were low spots that held water and were poorly drained.

Plaintiff was 40 years old. He had been a farmer all his life and for seven years had farmed in Watonwan county, Minnesota. In 1913 plaintiff's brother bought a farm in Norman county. Plaintiff went to Norman county in September, 1914. His brother took him to defendant and introduced him as a man looking for land. Defendant took him to look at his land. It is located five miles from plaintiff's brother's farm. Plaintiff testified that he and defendant entered the land 30 or 40 rods east from the southwest corner, and walked so that they came out at the west side at about the same distance north of the southwest corner.

We think there was evidence of misrepresentation as to stone and as to drainage, proper for submission to the jury. There was evidence that there was much stone and that it was under the surface so that it may not have been apparent to plaintiff. There was evidence that the land was not well drained, and this may not have been fully apparent to plaintiff while looking at the land in the fall of the year. With some hesitation we hold that there was evidence of misrepresentation as to weeds, such as to make that question proper for submission to the jury. Plaintiff testified that defendant told him he had been very careful in the selection of seed grain and there was no foul seed in the land. It is not claimed that defendant represented that there were no weeds. The weeds were in fact in plain sight. Plaintiff testified: "I seen those black weeds and it looks to me there wasn't much real grain stubble; well I thought it was about half and half, but I didn't pay no attention. * * * I asked him if there was any danger of weeds and he said, no, if you plow it in a decent fair season he said they never show up any more, but if you plow late in the fall * * * they will come up. * * * He said that is the reason they came up; it was plowed late the fall before." The black weeds were in fact kinghead and it is on the existence of kinghead that plaintiff relies.

The misrepresentation, if any, lay in the statement that there was no foul seed in the land, and that if the land was plowed in fair season the

weeds would not "show up any more." This latter statement could not of course be taken literally, but might well be understood to mean that with seasonable plowing there would be no weeds that would trouble the crops of small grains such as were there sown. One not familiar with kinghead might be deceived into believing that it could be so eradicated, but the evidence is practically undisputed that it takes something more than seasonable plowing to eradicate kinghead. This weed grows from seed and it grows the seed abundantly. The evidence is that the seeds may lie in the ground as long as seven years; that they will germinate when the land is cultivated and climatic conditions are favorable; that the only sure way to eradicate the seed is to furnish the conditions favorable for germination, as by planting corn or potatoes, and then, by cultivation, to kill the plants before they again go to seed, and the evidence is that by the best of effort one cannot hope to get rid of the seed in one year's cultivation.

2. For error in exclusion of evidence which seems to us of substantial materiality a new trial must be granted. Thomas C. Day & Company was the fee owner of the land. Defendant had only a land contract. He in turn gave a land contract to plaintiff calling for payments in instalments extending over five years. In August, 1916, and long after plaintiff had become informed as to the condition of the land, defendant was called to Crookston and found there plaintiff and George W. Wishard, an officer of the Day Company. Defendant offered to prove that while at Crookston a new contract was made, by which plaintiff was to receive a deed, give a first mortgage to Wishard for $4,500, and a second mortgage to defendant for $2,800, payable at times different from the original contract and at an increased rate of interest, and that plaintiff received his deed and gave this mortgage to defendant without making any claim that he had any offset for damages. This evidence the court excluded. In Humphrey v. Sievers, 137 Minn. 373, 163 N. W. 737, it was said that one induced by fraud to purchase land waives the fraud, if, after discovering it, he enters into a new agreement or engagement respecting the transaction.

On mere offers of proof we cannot determine whether facts exist which would conclude plaintiff under the doctrine of Humphrey v. Sievers. But it is clear to us that, whether the proposed evidence was conclusive

or not, it was material and had an important bearing on the case. Plaintiff was contending on the trial that at the time he gave this mortgage he had a claim against defendant for an amount exceeding the amount of the mortgage. Whether he had such a claim was the issue submitted to the jury. The case was a close one on the evidence. The jury in fact found that plaintiff's offset exceeded in amount the mortgage that he gave. Men do not commonly give large mortgages to those whom they do not owe. Had the jury been advised that plaintiff gave such a mortgage and at the time of giving it made no assertion of his claim for damages, their verdict might have been different. We are convinced that the proposed evidence would have been helpful to the jury in determining the issue submitted to them and that it should have been received.

Order reversed and new trial granted.